IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

KIRK MACKEY,                          )

                 )

         Plaintiff,            )

                 )    CIVIL ACTION

vs.                         )

                 )    Case No. 4:26-CV-03653

CPM HOLDINGS, LLC,        )

                 )

         Defendant.      )

## **COMPLAINT**

COMES NOW, KIRK MACKEY, by and through the undersigned counsel, and files this, his Complaint against Defendant, CPM HOLDINGS, LLC, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"). In support thereof, Plaintiff respectfully shows this Court as follows:

## **JURISDICTION**

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendant's failure to remove physical barriers to access and violations of Title III of the ADA.

## **PARTIES**

2. Plaintiff, KIRK MACKEY (hereinafter "Plaintiff") is, and has been at all times relevant to the instant matter, a natural person residing in Houston, Texas (Harris County).

3. Plaintiff is disabled as defined by the ADA.

1

4.     Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking and standing.

5.     Plaintiff uses a wheelchair for mobility purposes.

6.     In addition to being a customer of the public accommodation on the Property, Plaintiff is also an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA. His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

7.     Defendant, CPM HOLDINGS, LLC (hereinafter "CPM HOLDINGS, LLC"), is a domestic limited liability company that transacts business in the State of Texas and within this judicial district.

8.     Defendant, CPM HOLDINGS, LLC, may be properly served with process for service via its Registered Agent, to wit:  c/o Michael L. Fuqua, Registered Agent, 7941 Katy Fwy, #285, Houston, TX  77024.

**FACTUAL ALLEGATIONS**

9.     On or about December 4, 2025, Plaintiff attempted to be a customer at "Red Balloon Café," a casual café located at 1800 W. Sam Houston Parkway North, Houston, TX 77043, referenced herein as "Red Balloon".  *See* Receipt attached as Exhibit 1.  *See* also photo of

2

Plaintiff attached as Exhibit 2.

10.    Prior to filing this action, Plaintiff again travelled to 1800 W. Sam Houston Parkway North, Houston, TX 77043 to be a return customer of Red Ballon Café to try their famous chicken fried steak, but upon arriving was reminded of the seriously challenging nature of the barriers to access present and was deterred from entering the restaurant and patronizing it.

11.    Defendant, CPM HOLDINGS, LLC, is the owner or co-owner of the real property and improvements that Red Balloon is situated upon and that is the subject of this action, referenced herein as the "Property."

12.    Plaintiff's access to Red Balloon located at 1800 W. Sam Houston Parkway North, Houston, TX 77043, Harris County Property Appraiser's property identification number: 1053580000011 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless and until Defendant, CPM HOLDINGS, LLC, is compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

13.    Defendant, CPM HOLDINGS, LLC, as property owner, is responsible for complying with the ADA for both the exterior portions and interior portions of the Property. Even if there is a lease between Defendant, CPM HOLDINGS, LLC and a tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate the Defendant's independent requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations. *See* 28 CFR § 36.201(b).

3

14. Plaintiff lives 9 miles from the Property.

15. Given the close vicinity of the Property to the Plaintiff's residence, Plaintiff often travels by the Property.

16. Plaintiff has visited the Property twice before as a customer and advocate for the disabled. Plaintiff intends to revisit the Property within six months, likely sooner, after the barriers to access detailed in this Complaint are removed and the Property is accessible again. The purpose of the revisit is to be a customer of Red Balloon and to determine if and when the Property is made accessible and for Advocacy Purposes.

17. Plaintiff intends on revisiting the Property to purchase food and drink as a customer as well as for Advocacy Purposes but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous continuing barriers to access, as such, Plaintiff is currently deterred from returning to the Property until the barriers to access are removed.

18. Plaintiff travelled to the Property twice before as a customer and as an independent advocate for the disabled, encountered the barriers to access the Property that are detailed in this Complaint, engaged those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access present at the Property.

19. Plaintiff experienced or became aware of all identified barriers prior to filing the Complaint and because Plaintiff intends on revisiting the Property as a customer and advocate for the disabled within six months or sooner after the barriers to access are removed, it is likely that despite not actually encountering a particular barrier to access on the three attempted visits in the past, Plaintiff may encounter a different barrier to access that was not identified in the Complaint in a subsequent visit because the existing barriers prevented his access to and prevented

encountering additional barriers inside the units.  As such, all barriers to access identified in the Complaint must be removed and those interior barriers not identified but is reasonable for Plaintiff to encounter in the future must also be removed in order to ensure Plaintiff will not be exposed to barriers to access and legally protected injury.

20.	Plaintiff's inability to fully access the Property and the stores within in a safe manner and in a manner which inhibits the free and equal enjoyment of the goods and services offered at the Property, both now and into the foreseeable future, constitutes an injury in fact as recognized by Congress and is historically viewed by Federal Courts as an injury in fact.

## <u>COUNT I</u>
## <u>VIOLATIONS OF THE ADA AND ADAAG</u>

21.	On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq*.

22.	Congress found, among other things, that:

(i)	some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii)	historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)	discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)	individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)     the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

23.     Congress explicitly stated that the purpose of the ADA was to:

(i)     provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)    provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

* * * * *

(iv)    invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

24.     The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

25.     The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

26.     The Property is a public accommodation and service establishment.

27.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

28.     Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of

6

$500,000 or less). 42 U.S.C. § 12181 *et seq*.; 28 C.F.R. § 36.508(a).

29.   The Property must be, but is not, in compliance with the ADA and ADAAG.

30.   Plaintiff has attempted to, and has to the extent possible, accessed the Property in his capacity as a customer at the Property as well as an independent advocate for the disabled, but could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

31.   Plaintiff intends to visit the Property again in the very near future as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

32.   Defendant, CPM HOLDINGS, LLC, has discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

33.   Defendant, CPM HOLDINGS, LLC, will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant, CPM HOLDINGS, LLC, is compelled to

7

remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

34.    A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed, or was made aware of prior to the filing of this Complaint, that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

i.    In front of Red Balloon Cafe, the two accessible parking spaces do not have a marked access aisle in violation of Section 502.3.3 of the 2010 ADAAG standards. This barrier to access makes it nearly impossible for an individual in a wheelchair to enter and exit their vehicle at these accessible parking spaces due to the close presence of parked vehicles on either side of the accessible parking spaces not providing enough room for the wheelchair, this eliminates the accessible route from these accessible parking spaces.

ii.    In front of Red Balloon Cafe, the accessible parking space is not level due to the presence of an accessible ramp in the accessible parking space in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the van may rest upon the ramp and create an unlevel surface for Plaintiff to exit and enter their vehicle.  Moreover, when the vehicle parks in this space, the vehicle blocks the accessible route to the ramp.

8

iii. In front of Red Balloon Cafe, the accessible curb ramp is improperly protruding into the accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards.  This barrier to access would make it difficult and dangerous for Plaintiff to exit/enter their vehicle.

iv. In front of Red Balloon Cafe, due to the lack of an access aisle as well as the accessible ramp intruding in an accessible parking space, when a vehicle is parked in the accessible parking space and there are cars parked on either side of the accessible parking space, there lacks adequate space for Plaintiff to enter and exit their vehicle.  As a result, the Property lacks an accessible route from these accessible parking spaces to the accessible entrance of the Property in violation of Section 208.3.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property.

v. In front of Red Balloon Cafe, there are two accessible parking spaces that are missing identification signs in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

vi. In front of Red Balloon Cafe, the accessible ramp side flares have a slope in excess of 1:10 in violation of Section 406.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because steep slopes on ramp side flares could cause the wheelchair to tip over and injure Plaintiff.

vii. In front of Red Balloon Cafe, due to a failure to enact a policy of proper parking lot maintenance, the ground surfaces at the base of the accessible ramp have

9

vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 302, 303 and 405.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property as Plaintiff's wheel could get snagged on the vertical rise and cause the wheelchair to tip.

viii.    Due to a policy of not having parking stops for the parking spaces directly in front of the exterior access route, cars routinely pull up all the way to the curb and the "nose" of the vehicle extends into the access route causing the exterior access route to routinely have clear widths below the minimum thirty-six (36") inch requirement specified by Section 403.5.1 of the 2010 ADAAG Standards. This barrier to access would make it dangerous and difficult for Plaintiff to access exterior public features of the Property as there is not enough clear width for Plaintiff's wheelchair.

ix.    Due to a policy of not having parking stops for the parking spaces directly in front of the exterior access route, cars routinely pull up all the way to the curb and the "nose" of the vehicle extends into the access route as a result, in violation of Section 502.7 of the 2010 ADAAG Standards, parking spaces are not properly designed so that parked cars and vans cannot obstruct the required clear width of adjacent accessible routes. This barrier to access would make it dangerous and difficult for Plaintiff to access exterior public features of the Property as there is not enough clear width for Plaintiff's wheelchair.

10

x.      There are openings in the ground surfaces of the exterior access route of the shopping plaza with widths exceeding ½ inch which would potentially cause the wheel of Plaintiff's wheelchair to get stuck in the gap and increasing the potential for Plaintiff's wheelchair to tip over in violation of Section 302.3 of the 2010 ADAAG Standards.

xi.     The total number of accessible parking spaces is inadequate and is in violation of Section 208.2 of the 2010 ADAAG standards. There are 162 total parking spaces at the property, which requires a minimum of six accessible parking spaces, but there are only four accessible parking spaces. This barrier to access would make it difficult for Plaintiff to locate an available accessible parking space as such a small number of accessible parking spaces in a large parking lot increases the likelihood of there not being an available accessible parking space.

xii.    At Red Balloon Café, for the accessible ramp leading from the exterior seating area, the required handrail on the left side of the accessible ramp is not at the proper height in violation of Section 505.4 of the 2010 ADAAG standards as the upper surfaces of the handrail do not have a height between 34 and 38 inches from the ground. This barrier to access would make it difficult for Plaintiff to safely utilize the accessible ramp.

xiii.   In front of unit 113 there are two accessible parking spaces, the accessible parking spaces share a common access aisle which is not level due to the presence of accessible ramp in the access aisle in violation of Sections 502.4 and 406.5 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked

11

at the Property as the van may rest upon the ramp and create an unlevel surface for Plaintiff to exit and enter their vehicle.

xiv.    In front of unit 113, the Property has an accessible ramp that lacks finished edges or edge protection and/or is otherwise in violation of Section 405.9 of the 2010 ADAAG standards. This barrier to access would expose Plaintiff to increased risk of injury for if the wheelchair should fall off the side edge of the ramp, the lack of edge protection would likely cause Plaintiff to tip and incur injury.

xv.    In front of Unit 113, accessible parking spaces are missing identification signs in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

xvi.    Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

**RED BALLOON CAFÉ RESTROOMS**

xvii.    The restroom door lacks a clear minimum maneuvering clearance, due to the proximity of the door hardware within 18 inches to the adjacent wall, in violation of Section 404.2.4 of the 2010 ADAAG standards.  This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely utilize the restroom due to the fact individuals in wheelchairs have their feet sticking out in front of them and when there is inadequate clearance near the door (less than 18 inches), their protruding feet block their ability to reach the door hardware to open the door.

xviii.    The required grab bars/handrails adjacent to the commode are missing and violate Section 604.5 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely transfer from the wheelchair to the toilet and back to the wheelchair.

xix.    The distance of the centerline of the toilet is more than 18" from the side wall. As a result, the toilet is not adequately positioned from the side wall or partition positioning in violation of Section 604.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

xx.    The restroom lacks signage in compliance with Sections 216.8 and 703 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to locate accessible restroom facilities.

xxi.    The door hardware providing access to the restroom or stall is missing in violation of Section 404.2.7 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to utilize the restroom facilities.

xxii.    Restrooms have a sink with inadequate knee and toe clearance in violation of Section 306 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to utilize the restroom sink as Plaintiff is seated in a wheelchair and, when seated, Plaintiff's feet and legs protrude out in front.  In order to properly utilize a sink, Plaintiff's legs must be able to be underneath the surface of the sink, but due to the improper configuration of the sink, there is no room underneath for Plaintiff's legs and

13

feet.

xxiii.   The height of the bottom edge of the reflective surface of the mirror in the bathroom is above the 40-inch maximum height permitted by Section 603.3 of the 2010 ADAAG standards. This barrier to access would make it difficult for the Plaintiff and/or any disabled individual to properly utilize the mirror in the restroom since Plaintiff is sitting in a wheelchair and is lower than a person standing up.

35.   The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

36.   Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

37.   The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

38.    All of the violations alleged herein are readily achievable to modify the Property into compliance with the ADA due to the fact the modifications necessary to cure the barriers to access identified in paragraph 34 of this Complaint are the specific types of barriers listed in 28 C.F.R. § 36.304 as readily achievable to modify.

39.   Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

40.   Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendant, CPM

14

HOLDINGS, LLC, has the financial resources to make the necessary modifications. According to the Property Appraiser, the Appraised value of both Property is $5,965,056.00.

41.     The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendant has available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction from the IRS for spending money on accessibility modifications.

42.     Upon information and good faith belief, the Property has been altered since 2010.

43.     In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

44.     Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant, CPM HOLDINGS, LLC, is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

45.     Plaintiff's requested relief serves the public interest.

46.     The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendant, CPM HOLDINGS, LLC.

47.     Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendant, CPM HOLDINGS, LLC, pursuant to 42 U.S.C. §§ 12188 and 12205.

48.     Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendant, CPM HOLDINGS, LLC, to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)     That the Court find Defendant, CPM HOLDINGS, LLC, in violation of the ADA and ADAAG;

(b)     That the Court issue a permanent injunction enjoining Defendant, CPM HOLDINGS, LLC, from continuing their discriminatory practices;

(c)     That the Court issue an Order requiring Defendant, CPM HOLDINGS, LLC  to (i) remove the physical barriers to access and (ii) alter the Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d)     That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

(e)     That the Court grant such further relief as deemed just and equitable in light of the circumstances.

Dated: May 6, 2026

Respectfully submitted,

/s/ Douglas S. Schapiro
Douglas S. Schapiro, Esq.
Southern District of Texas ID No. 3182479
The Schapiro Law Group, P.L
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com

16